## RICHARD W. PRATT & another *vs.* JAMES A. MAYNARD.

Suffolk. Nov. 12. — Dec. 9, 1874. WELLS & DEVENS, JJ., absent.

A boiler made for a person was by his direction placed by the maker on a lot of land belonging to him in the rear of his shop, and was paid for. *Held*, that as between the maker and the purchaser, the title passed to the latter.

If the mortgagee of a chattel orally authorizes the mortgagor to sell it, a sale by the latter passes the title to a purchaser in good faith.

A manufacturer bought materials and borrowed money from time to time to carry on his business, from a person to whom he gave, as security, mortgages on his stock and manufactured property. One of these mortgages included a boiler which was afterwards paid for by the purchaser, and by his direction placed by the maker on a lot near his shop. The purchaser had dealt with the maker for three years before, buying stock and materials included in such mortgages, and sometimes paying the maker and sometimes the mortgagee, who had a general knowledge of this course of dealing, and acquiesced in it. *Held*, on the trial of the issue whether the purchaser or the mortgagee had the better title to the boiler, that the jury would be warranted in finding that the mortgagee gave the mortgagor a general authority to sell mortgaged property bought by the plaintiff, and that evidence that the mortgagee did not know of the sale of the boiler or of the delivery of it to the purchaser, was immaterial.

REPLEVIN of a locomotive boiler. Writ dated June 14, 1869. The answer set up the ownership of the replevied property in Isaac M. Cate, and the defendant's right of possession in the same as Cate's agent and keeper. The case was heard in the Superior Court, without a jury, by *Brigham*, C. J., who allowed a bill of exceptions in substance as follows :

In 1867, 1868 and 1869, the plaintiffs employed William H. Snow, a boiler-maker, to repair and build boilers and machinery for them, and usually paid said Snow therefor in bank checks as soon as such work was done. During these years, Cate was selling iron and other materials, and lending money to Snow to enable him to carry on his business, and as security therefor took mortgages of Snow's stock and manufactured property, and also had, for the same purpose, Snow's order to the plaintiffs, accepted by

them on October 28, 1867, to pay to Cate all moneys due and to become due to Snow from the plaintiffs on account of his work done for them. The plaintiffs, late in 1868, knew that Cate was furnishing Snow with iron and other materials, and had large claims against him, and supposed that he held as security therefor Snow's stock and manufactured property. They were several times urged by Cate in the summer and autumn of 1868 to make payments to him on account of work done by Snow for them. Four bills, chiefly for repairs, were in the early part of 1868 rendered by Snow to the plaintiffs, on account of which the plaintiffs gave checks to Snow for small sums, and some of these checks were indorsed by Snow to Cate. At that time the plaintiffs had no knowledge of Cate's connection with Snow's business, beside that derived from these indorsements. The boiler replevied was one of two boilers ordered to be manufactured by Snow for them in June and July, 1868, and the boiler not replevied was completed and delivered to the plaintiffs in September or October, 1868. Cate, in the autumn of 1868, knew of the order for the two boilers, and that the price of them was to be about $1350. The replevied boiler was completed by Snow before December, 1868, but not delivered to the plaintiffs otherwise than by placing it on a lot of land in the rear of Snow's shop by direction of the plaintiffs, acquiesced in by Snow. This arrangement was made before the replevied boiler was completed. The boiler remained there until June, 1869, when Cate took possession of it by his agent, the defendant, and kept it until the plaintiffs replevied it in this action.

In December, 1868, Snow rendered a bill to the plaintiffs for work done, which included the price of the replevied boiler, and amounted to $1901.60, and this bill was paid by the plaintiffs to Snow by various sums in cash at different dates, and by a promissory note for $1400, dated December 22, 1868. This note was received by Cate from Snow on December 26, 1868, indorsed by Cate, its net proceeds put to Snow's credit in account with Cate, and on its maturity it was paid by the plaintiffs.

The replevied boiler, with other personal property, was the subject of one of a series of mortgages made by Snow to Cate in 1868, and duly recorded as made. Notice of his intention to foreclose the mortgage applying to the replevied boiler and other

property was given by Cate to Snow on May 6, 1869; and on May 7, 1869, Snow released to Cate all his right and interest in the property to which it applied. Thereupon Cate, having taken possession of the replevied boiler and the other property, to which said mortgage and the proceedings for foreclosure and release applied, sold the same, excepting the replevied boiler, which he put into the keeping of the defendant. The proceeds of the mortgaged property thus sold amounted to about $400; and this sum, together with the value of the replevied boiler, which was about $600, was not sufficient to pay the debt due from Snow to Cate, and secured by that mortgage. The only evidence in the case was the report of an auditor, who reported the facts herein stated, and no other facts, and who reported no conclusions or findings upon the legal effect of the facts reported by him, or any finding for either party upon them.

The judge found, upon the foregoing facts, that there was a course of dealing between the plaintiffs and Snow in the years 1867, 1868, and 1869, in manufacturing boilers, &c., by Snow upon the plaintiffs' orders for the same; that the sale, delivery and payment for the same between Snow and the plaintiffs, in all of which dealing more or less of the stock, materials, &c., mortgaged by Snow to Cate, were disposed of to the plaintiffs, for which Snow received payment; that in some instances Snow turned over to Cate the money received in such payment, or such payment was made directly by the plaintiffs to Cate upon Snow's order, and that Cate had a general knowledge of such a course of dealing between the plaintiffs and Snow, and acquiesced in it, and received and applied more or less of the fruits of it to the payment of the debt secured by the mortgages of Snow to him. The judge did not find, upon the facts herein stated, that Cate had any knowledge of the specific arrangement between the plaintiffs and Snow that the replevied boiler, when completed, should be placed in the lot of land in the rear of Snow's shop, or that it was placed there in January, 1869, and remained there until taken and sold by him in May, 1869, under such an arrangement; nor did the judge find that Cate knew that the bill rendered by Snow to the plaintiffs in December, 1868, for $1901.60 applied in part to the replevied boiler, or that the promissory note for $1400 was received by Snow in part payment of a bill which applied in any part to the replevied boiler.

The plaintiffs contended that the course of dealing between them and Snow in relation to more or less of the property mortgaged by him to Cate, known generally and assented to by Cate, together with his receipt of more or less of the fruits of the same with full knowledge, operated to give Snow license and authority to sell any of the mortgaged property to the plaintiffs, and that the facts proved conclusively a sale, payment for, and delivery of the replevied boiler, under such a license and authority. The defendant contended that, in the absence of evidence that Cate knew of the sale or payment for the replevied boiler, or any act by Snow tending to show that it had passed out of his possession or control, the court could not find a sale of the same to the plaintiffs with Cate's consent, or by his authority or license, notwithstanding the fact that the course of dealing between the plaintiffs and Snow was generally known to and acquiesced in by Cate.

The judge ruled against the claim of the plaintiffs, sustained and ruled in accordance with the claim of the defendant, found for the defendant, and assessed damages in the sum of one dollar ; and the plaintiffs alleged exceptions.

*B. E. Perry & S. W. Creech, Jr.*, for the plaintiffs.

*E. D. Sohier & C. A. Welch*, for the defendant.

MORTON, J. This is an action of replevin for a locomotive boiler. It appeared at the trial that the plaintiffs bought the boiler of Snow, paid for it, and that, by direction of the plaintiffs, Snow placed it on a lot of land in the rear of Snow's shop. The title to the boiler thus passed to the plaintiffs, as between them and Snow. It also appeared that, before this, Snow had mortgaged the boiler, together with other property, to Cate, who is the real defendant in this case, and the issue was whether the plaintiffs or Cate had the better title. The plaintiffs contended that the sale to them was made by Snow with the consent and by the authority of Cate.

As we understand the bill of exceptions, the learned judge ruled, as matter of law, that " in the absence of evidence that Cate knew of the sale or payment for the replevied boiler, or any act of said Snow tending to show that it had passed out of his possession or control, the court could not find a sale of the same to the plaintiffs, with said Cate's consent, or by his authority or license." This is the same, in legal effect, as a ruling that there

was no evidence which would justify a jury, if the case were on trial before it, in finding a verdict for the plaintiffs.

We are of opinion that this ruling was erroneous. If, after the mortgage to him was made, Cate orally authorized the mortgagor to make sales of the mortgaged property, a sale by the latter would convey a good title to a *bonâ fide* purchaser. *Stafford* v. *Whitcomb*, 8 Allen, 518.

Whether Cate gave Snow authority to sell the boiler in suit was a question of fact, and there was evidence in the case which would justify the finding of this fact in favor of the plaintiffs. Snow was a manufacturer of boilers, and Cate from time to time sold him iron and other materials, and lent him money " to enable him to carry on his business," taking as security mortgages of his stock and manufactured property. The plaintiffs dealt with Snow for three years, buying stock and materials, which were included in Cate's mortgages, sometimes paying Snow, and sometimes paying directly to Cate upon Snow's orders, and Cate had a general knowledge of this course of dealing and acquiesced in it. Without considering the other evidence, it would be competent for a jury, or the judge to whom the facts were submitted, to infer from these facts, if uncontrolled, that Cate gave Snow a general authority to sell the mortgaged property to the plaintiffs.

If this be so, the fact that Cate did not know of the sale of this specific boiler, or of Snow's acts in placing it in the rear lot, is immaterial, and would not terminate Snow's authority. As the ruling was, in substance, that it was not competent for the court upon all the evidence to find for the plaintiffs, there must be a new trial. *Exceptions sustained.*