JAMES F. GERRITY *vs.* WAREHAM SAVINGS BANK.

Plymouth.    March 12, 1909. — May 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Savings Bank. Mortgage,* Of real estate. *Assignment. Payment.*

Where the treasurer of a savings bank has been entrusted by its board of investment with the negotiation of a loan secured by a mortgage of real estate, further acts on his part, on discovering an outstanding attachment of the real estate, in requiring a first mortgage, prior to the attachment, to be assigned to the bank as security for the mortgage to the bank, instead of allowing it to be paid off, are within his implied authority as an executive officer of the corporation entrusted with the negotiation of the loan, and subsequent proceedings, to foreclose the underlying mortgage thus assigned to the bank, instituted by vote of its board of investment, are a ratification of the acquisition of the underlying mortgage as security.

If a savings bank, acting in good faith and solely in the interest of the bank, takes an assignment of an underlying mortgage to secure a loan made by it which already is secured by a second mortgage held by it on the same property, instead of causing the underlying mortgage to be paid off and discharged, this is a valid transaction against a person whose claim is subject to such underlying mortgage,

although the requirements of R. L. c. 113, § 26, cl. 1, and of § 29 of the same chapter in regard to the making of a loan on mortgage by a savings bank have not been complied with in taking the assignment.

A savings bank agreed to make a loan to a landowner, who was engaged in constructing a building on his land and already had made a mortgage on the land to secure a construction loan which was to cover the whole or any part of the amount named in the mortgage which should be advanced by the mortgagee. This mortgage was recorded. The bank was to take a mortgage on the same property if the title was found to be satisfactory. An examination of the title disclosed the fact that there was an attachment on the land made after and subject to the construction mortgage. The bank thereupon required that the underlying construction mortgage should be assigned to it as part of the transaction of making the loan, and agreed to hold it, first, "for the security and protection" of the bank as the holder of the later mortgage, and, second, for the security and protection of the mortgagee under the construction mortgage, as the holder of a third mortgage which was given to him by the mortgagor on his assigning the construction mortgage to the bank. Thereafter the bank instituted proceedings to foreclose the construction mortgage. The attaching creditor, who had obtained a judgment and had caused the mortgaged property to be sold to himself on execution, brought a bill in equity against the savings bank to enjoin the foreclosure of the construction mortgage, praying to have the assignment to the defendant set aside, or declared to be a discharge and satisfaction of the assigned mortgage, or to be allowed to redeem the real estate from the construction mortgage without being charged with sums advanced under that mortgage after his attachment had been recorded. *Held,* that, it having been the intention of the parties that the construction mortgage should be kept alive and the indebtedness not extinguished or discharged, the defendant held that mortgage by an effective assignment, and that the mortgage covered all the payments made under it and used for the purchase of the land and the construction of the building as well after notice of the plaintiff's attachment as before, the mortgage, as recorded at the time of the attachment, having fixed definitely the amount of the ultimate indebtedness thereunder and the continuance of the work of construction having merely carried out the contract according to its terms.

The assignee of a mortgage of real estate acquires the right to foreclose it for a breach of condition which occurred before the assignment.

BILL IN EQUITY, filed in the Superior Court on May 21, 1908, by a judgment creditor of one Morris Wheeler, who on September 9, 1907, had made an attachment upon certain real estate of Wheeler on Brunswick Street in that part of Boston called Roxbury, and on March 21, 1908, had caused such real estate to be levied upon in execution and to be sold to himself, subject to a mortgage made by Wheeler to one Joseph Rudnick on March 22, 1907, and assigned by Rudnick to the defendant on October 15, 1907, when such mortgage was overdue, alleging that the defendant paid no consideration for such assignment and that such mortgage had been paid and satisfied on October 15, 1907,

when the defendant received from Wheeler two later mortgages upon the same property, that the defendant took the assignment of the mortgage from Rudnick knowing of the plaintiff's rights and designing to deprive him of them, and that on April 25, 1908, the defendant began foreclosure proceedings under the mortgage assigned to it by Rudnick, that the plaintiff offered to pay to the defendant whatever sums were due and payable to it under that mortgage, but that the defendant refused to account to the plaintiff or to receive the money or to discontinue the foreclosure sale ; and praying that the assignment of the mortgage of March 22, 1907, from Rudnick to the defendant might be decreed to be in equity a discharge of that mortgage, that the defendant might be ordered to cancel and discharge that mortgage, that an accounting might be decreed between the plaintiff and the defendant to ascertain the amount, if any, which was due upon that mortgage of March 22, 1907, if it should be proved at the trial that the defendant paid a lawful consideration for the assignment, that an accounting might be had between the plaintiff and the defendant to ascertain the amount, if any, which was due to the defendant upon the mortgages of October 15, 1907, that the defendant might be enjoined from transferring, assigning, or otherwise disposing of the mortgages of October 15, 1907, that the defendant, its agents and servants, might be enjoined from further proceeding with the foreclosure sale of the mortgage of March 22, 1907, and for further relief.

The material facts were in substance as follows :

At the time the attachment was made Wheeler, who was a builder, was engaged in the construction of a building upon the land. He had, long before the attachment, given a mortgage of $24,000 on the property to Rudnick, of which $6,000 represented the purchase price of the land (which had been conveyed by Rudnick to Wheeler), $15,000 Rudnick agreed to advance from time to time to be used in the construction of the building, and $3,000 by agreement was left to be advanced or not, as Rudnick might see fit. If Rudnick should advance the whole $3,000, the mortgage was to be security therefor; if he should advance less than $3,000, the mortgage was to be cut down accordingly. Rudnick, before the attachment, had agreed with Wheeler to advance the full amount, and before September 9,

1907, the date of the attachment, had advanced in money $16,850, and after that time his further advances in money aggregated $1,903.

Shortly before October 15, 1907, the building being practically completed, Wheeler applied to the Wareham Savings Bank, the defendant, for a permanent mortgage loan of $24,000 on the property. The bank, through its investment committee, after investigation, agreed to make a loan of $22,000, provided Wheeler would take $20,000 thereof in cash and $2,000 in some land owned by the bank in Boston. This proposition was accepted by Wheeler, and the matter was referred by the bank to its conveyancer, Samuel T. Harris.

Mr. Harris examined the title, prepared the papers, and found everything right except for the attachment outstanding in favor of the plaintiff against Wheeler. This was called to the attention of one Besse, the treasurer of the bank, on October 15, 1907, at the registry of deeds by Mr. Harris. Besse had come from Wareham as the agent of the bank, bringing the money and ready to complete the transaction. Mr. Harris advised him that an assignment of the first mortgage — namely, the Rudnick construction mortgage of $24,000 — to the bank, as additional collateral security for the loan, would render the investment by the bank entirely safe. The treasurer, without the express authority of or consultation with the board of investment, relying on the advice of Mr. Harris, agreed to take the assignment of the mortgage, and such assignment was drawn and recorded, and the two new mortgages of $11,000 each were placed on record, and the money was turned over. Wheeler, being indebted to Rudnick for an amount considerably in excess of the $20,000 cash then paid over, turned this cash over to Rudnick. Rudnick immediately took another mortgage from Wheeler, which was placed on record, in the sum of $5,616, which represented the balance due Rudnick from Wheeler ; and the bank by Besse, its treasurer, signed the instrument printed below.

On April 8, 1908, there having been a breach of the original Rudnick mortgage, Besse, the treasurer of the defendant bank, in its behalf entered and took possession of the premises for the purpose of foreclosing the same. Upon the bank's taking possession, the plaintiff brought the present bill, and the sale under the

power contained in the original Rudnick mortgage was adjourned from time to time.

The instrument signed in behalf of the defendant, referred to above, was as follows :

"Boston, October 15, 1907.

"Whereas, there has been this day assigned to the Wareham Savings Bank by Joseph Rudnick a mortgage of twenty-four thousand (24,000) dollars dated March 22, 1907, and recorded with Suffolk Deeds Book 3197 Page 587 covering the estates Nos. 58 & 60 Brunswick Street in that part of Boston, Mass., formerly Dorchester ;

"Now, the said Wareham Savings Bank hereby declares and acknowledges that it has received said mortgage and holds the same as a muniment of title and for the following purposes, namely :

"1. For the security and protection of said bank as the holder of two mortgages each dated October 15, 1907, and each for twelve thousand (12,000) dollars given to it by Morris Wheeler, one upon the estate No. 58 Brunswick Street, and the other upon the estate No. 60 Brunswick Street, both of which mortgages have this day been recorded with Suffolk Deeds.

"2. For the security and protection of Joseph Rudnick (subject to the rights of said bank as herein recited) as he is the holder of a certain mortgage given to him this day by said Morris Wheeler for fifty-six hundred and sixteen (5616) dollars, covering both of said estates ;

"3. The said mortgage of twenty-four thousand (24,000) dollars assigned to the said bank as aforesaid may be discharged by it at any time after sixty days from the date hereof without the assent of the said Joseph Rudnick and Morris Wheeler or either of them, if in the opinion of Samuel T. Harris of Boston aforesaid such discharge will not in any way affect or impair the respective rights and security of the said bank and of the said Joseph Rudnick under their above described mortgages this day recorded as aforesaid.

"Wareham Savings Bank,
By Frank A. Besse, Treas."

The case came on to be heard by *Richardson*, J., who reserved it for determination by this court, reporting the evidence.

· *D. Stoneman,* for the plaintiff.

*F. N. Nay,* for the defendant.

BRALEY, J.   The plaintiff as the purchaser at the sale on execution, having acquired the interest of the judgment debtor at the date of the attachment in the realty described in the bill, the subsequent mortgages given to the defendant were subject to his title.   R. L. c. 178, § 26.   *Wiggin* v. *Heywood,* 118 Mass. 514, 516.   But the bank, having obtained by assignment from Rudnick the prior outstanding mortgage given to secure advances for the purchase price of the land and the construction of the buildings, which it is proceeding to foreclose, the plaintiff asks for a decree, that either the bank has no valid title, or that the mortgage has been discharged and extinguished, or that, if still enforceable, he can redeem without being charged with the sum advanced by the mortgagee after the attachment had been recorded.

It is manifest from the agreed statement of the evidence, that, before recording the mortgages given to secure the loan obtained from the defendant, the treasurer upon being notified of the attachment procured the assignment of the first mortgage for the protection of the bank.   If the concurrent agreement with the assignor and the assignment are construed as one instrument, the recitals show there was no intention to depart from the purpose for which it had been obtained.   The bank indeed stipulated that the assignor's second mortgage should be protected, but the defendant concedes that the stipulation cannot impair the priority of the attachment.   The negotiation of the loan and the execution of the papers appear to have been intrusted to the treasurer, and his subsequent acts upon ascertaining the condition of the title being for the benefit of the bank, were, under the circumstances, within his implied powers as an executive officer of the corporation.   *Bristol County Savings Bank* v. *Keavy,* 128 Mass. 298.   Yet, if his original authority may not have been so broad, the foreclosure by entry and sale afterwards instituted by vote of the board of investment was a sufficient ratification.   *North Brookfield Savings Bank* v. *Flan- · ders,* 161 Mass. 335.   *New England Ins. Co.* v. *Wing,* 191 Mass. 192.

Nor can the defendant's title be successfully attacked because

being a savings bank subject to the limitations as to investments found in R. L. c. 113, § 26, cl. 1,* as the plaintiff contends, it was prohibited from taking the assignment, or under its chartered powers from binding itself by the accompanying agreement. The plaintiff does not charge fraud, and the transaction, having been entered into and performed in good faith solely in the interest of the bank, was a valid one, and, even if upon discovery of the state of the title the defendant could have refused to complete the negotiations, it cannot be assailed on this ground. *Chaffee* v. *Middlesex Railroad,* 146 Mass. 224.   *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391, 404, and cases cited.   *National Bank* v. *Matthews,* 98 U. S. 621.   *National Bank* v. *Whitney,* 103 U. S. 99.   *Force* v. *Age-Herald Co.* 136 Ala. 271.

If, instead of lending the money on the mortgages which was to be paid by the mortgagor to Rudnick in discharge of the first mortgage, the defendant had advanced the proceeds directly to him, and then had taken an assignment, the transaction would not have operated as a payment, but as a purchase.   *Bremer* v. *Columbian National Ins. Co.* 199 Mass. 344.   It having been the intention of the parties that the mortgage should be kept alive, the indebtedness was not extinguished or discharged, and the defendant succeeded to the security.   *Everett* v. *Gately,* 183 Mass. 503, 505.   *Chetwynd* v. *Allen,* [1899] 1 Ch. 353.   It is not contended that either the amount paid by the bank, or the sum advanced by Rudnick after notice of the attachment was in excess of the disbursements actually used for the purchase of the land and the construction of the building.

By the sale on execution the plaintiff came into the ownership of the property, of which the money put into the buildings formed a part. In the effort to retain the benefit of the last instalment by having it excepted from the mortgage, the plaintiff relies on the case of *Barnard* v. *Moore,* 8 Allen, 273, where after mortgaged personal property had been attached and the

---

* The provision of this section referred to in the plaintiff's brief was that " A loan on mortgage shall not be made except upon the report of not less than two members of the board of investment, who shall certify " as there required.   The requirements of § 29 as to applications for loans also were referred to.

mortgagee had been summoned as a trustee, he sought to avail himself of the mortgage to secure other sums falling due from the mortgagor subsequent to the attachment and service.    It was said in the opinion, that, the claim of the attaching creditor having become fixed, a new and distinct indebtedness could not be added which arose afterwards.

In the present case the full amount of the ultimate indebtedness was definitely fixed by the mortgage deed, which had been recorded, and, if only a part had been advanced at the time of the attachment, the plaintiff had constructive notice of the contract, the performance of which had not been interrupted.    The continuance of the work of construction was not in any sense an attempt to tack on a new debt since contracted, but was the carrying out of the contract according to its terms.    The mortgage still remained a valid incumbrance, to which for the full amount the plaintiff's title is subordinate.    *Bassett* v. *Daniels*, 136 Mass. 547.    *Tillinghast* v. *North End Savings Bank*, 178 Mass. 458.    *Robinson* v. *Williams*, 22 N. Y. 380.    *Witczinski* v. *Everman*, 51 Miss. 841, 845.    *Nelson* v. *Iowa Eastern Railroad*, 8 Am. Ry. Rep. 82.    *Galveston, Houston, & Henderson Railroad* v. *Cowdery*, 11 Wall. 459.    It appears that when the mortgage was assigned the taxes which the mortgagor covenanted to pay were in arrears, and, they having remained unpaid, the plaintiff contends that the defendant cannot foreclose for this breach.    But the unrestricted right of foreclosure continued, and could be exercised as well after as before the assignment.    The power to sell for a covenant broken was not controllable at the will of the mortgagor, or by his successor in title, but, being irrevocable, could be suspended or waived only by the consent of the mortgagee, or by the defendant to whom his rights had passed.

The result is, that the plaintiff is entitled to redeem on payment of the amount of the mortgage, and costs of foreclosure.

*Decree accordingly.*