WILLIAM L. GRAY & others *vs.* ELLEN L. McCLELLAN & others.

Middlesex. November 12, 1912. — February 27, 1913.

Present: HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Mechanic's Lien. Mortgage,* Of real estate: construction mortgage. *Words,* " Actually existing."

At the hearing of a petition for the establishment of a mechanic's lien the following facts appeared: The owner of three lots of land gave a mortgage upon each lot, purporting to secure the payment of a note for $3,500, to one who assigned all three mortgages to a bank ostensibly to secure the payment of a note of the assignor for $9,000, but really to secure the payment to the bank of such sums as it might advance under an agreement under seal, signed by the owner and the mortgagee and delivered to the bank, which specifically stated that the bank could not be required to advance any sum if it did not choose to. After the mortgages and assignments were recorded, the petitioner made with the owner a contract for the performance of labor in the erection of buildings upon the lots. At the time of the assignment of the mortgages to the bank it knew that mechanics were to perform labor in the erection of buildings upon the land. It afterwards advanced $5,600 to the mortgagees, all but $1,000 of which was advanced after it knew that some mechanics were at work upon the premises, although it did not know who the mechanics were, and after the petitioner had made his contract with the owner. The last $1,000 advanced by the bank was advanced after the petitioner had filed in the registry of deeds the statement of his lien required by R. L. c. 197, § 6, but the bank did not know of the filing of the statement. The judge who heard the case ruled that the petitioner's lien was subject to the bank's lien for all but the last payment of $1,000. The bank alone appealed. *Held,* that after it knew that mechanic's liens had attached, the bank could not lessen the value of the equity of redemption to the disadvantage of the lienors by making payments which, if it had refused them, it could not have been compelled to make. *Held, also,* that, since the bank alone had appealed, and the judge's ruling was sufficiently favorable to it, the decree should be affirmed.

PETITION, filed in the Police Court of Lowell on November 6, 1911, for the enforcement of mechanics' liens claimed by the petitioners by reason of labor performed by them under a contract made with them by one Michael Salerno for the performing of labor as carpenters upon buildings to be erected upon three separate lots of land on Webber Street in Lowell, then owned by Salerno, but owned at the time of the filing of the petition by the respondents Ellen L. McClellan and Annie McLean. The Central Savings Bank of Lowell was admitted as a party respondent.

On appeal to the Superior Court the case was heard by *Fessenden,* J., upon an agreed statement of facts, from which the following facts appeared:

On May 18, 1910, there were placed on record a deed from one Eager to Salerno of the three lots in question, three separate mortgages from Salerno to James J. Smith and Philip J. Neary, each being "for $3,500," dated May 2, 1910, and covering one of the lots, and assignments of such mortgages to the Central Savings Bank dated May 3, 1910. No money was advanced directly on any of the mortgages, but whatever was advanced was advanced by the bank directly upon a note for $9,000 signed by Neary, Smith and one Joel H. Lucas, dated May 3, 1910, to secure which the assignments of the mortgages to the Central Savings Bank were made. The consideration for the note was money to be advanced by the Central Savings Bank to Smith and Neary in accordance with an agreement under seal dated May 2, 1910, signed by Neary, Smith and Salerno, and reading in substance as follows:

"Whereas Michael Salerno . . . on May 2, 1910, executed and delivered to Philip J. Neary and James J. Smith . . . three several mortgage deeds of the sum of $3,500 each covering lots [in question] . . . and

"Whereas said James J. Smith and Philip J. Neary have this day assigned said mortgage. deeds and the three notes to The Central Savings Bank of Lowell, Mass., as collateral security for a loan of $9,000 and

"Whereas, certain buildings are about to be constructed on said land described in said mortgages:

"Now, therefore, Know all men by these presents, that we jointly and severally do hereby agree for ourselves and our heirs and assigns with said The Central Savings Bank and its successors and assigns not to demand said sum of $9,000 or said sum of $3,500 on each of said mortgage notes or any part or parts thereof from said Bank; and further agree that said Bank may advance such sum or sums on account of said note or notes as the Board of Investment of said Bank from time to time may approve, and we further agree that there shall be no obligation on the part of said Bank to advance any sum or sums of money by reason of said notes or mortgages or either of them."

The Central Savings Bank did not ask Michael Salerno to mortgage the premises to Smith and Neary. The bank took assignments from Smith and Neary instead of mortgages direct from Salerno because Smith and Neary made application for a loan and Salerno did not.

Money was lent by the bank in accordance of the above agreement as follows: May 28, 1910, $1,000 to Smith and Neary; June 4, 1910, $1,000 to Smith and Neary; June 18, 1910, $600 to Smith and Neary; July 6, 1910, $2,000 to Smith and Neary; July 21, 1910, $1,000 for account of Smith and Neary.

At the time the mortgages were recorded the officers of the Central Savings Bank knew that buildings were to be constructed upon each of the three lots and that mechanics were to perform labor upon them, and before more than $1,000 was advanced on the mortgages such officers knew that mechanics were actually at work upon the premises but did not know who the mechanics were. The petitioners were the mechanics so working.

The petitioners' contract with Salerno was made on June 3, 1910. The certificates required by law to be filed in the registry of deeds upon the claiming of a mechanic's lien were so filed by the petitioners on July 14, 1910.

When the bank made the payment of $1,000 on July 21, 1910, it had no actual knowledge or notice of the claiming of the liens, and had no actual knowledge or notice that the petitioners had not been paid for their labor.

The judge made the following memorandum:

"The petitioners' liens to be established in the sum of $106.02 as debt or damage and . . . costs . . . as against the respondents, and as against the Central Savings Bank subject to certain mortgages amounting to the sum of $4,600 and no more, that being the total amount which had been advanced by said bank under said mortgages prior to the date of the filing of the petitioners' claim of lien in the Registry of Deeds."

A decree of sale was made in accordance with the memorandum. The Central Savings Bank alone appealed.

The case was submitted on briefs.

*A. S. Howard,* for the Central Savings Bank.

*D. J. Donahue & G. F. Toye,* for the petitioners.

*H. T. Lummus,* by leave of the court, filed a brief as *amicus curiae.*

BRALEY, J.  The question for decision is, whether the petitioners' liens for labor have priority over the mortgages held by the Central Savings Bank, one of the respondents.  By the R. L. c. 197, § 5, "The lien shall not avail against a mortgage actually existing and duly recorded prior to the date of the contract under which the lien is claimed."

The mortgages given by the owner of the premises consisting of three parcels were almost simultaneously assigned to the bank by the mortgagees, to whom, according to the purport of each mortgage, the mortgagor was indebted in the amount of his promissory note of even date.

The mortgages having been recorded previously to the date of the petitioners' contract, it would be of no consequence, if the actual transaction corresponded with the face of the papers, that the value of the property must have been enhanced by the petitioners' labor.  They had constructive notice of the mortgages, to which under the statute their liens would be subordinate. *McDowell* v. *Rockwood*, 182 Mass. 150, 154.  *Rochford* v. *Rochford*, 188 Mass. 108, 111.  It is for the Legislature to make an exception if of opinion that a mechanic may be unjustly deprived of his wages, because under the present law it is possible that what he should have received enures to those who have given no equivalent.  See *Mutual Life Ins. Co.* v. *Walling*, 6 Dick. 99.

But these instruments do not disclose the real arrangement and understanding of the parties.  It appears from the separate, unrecorded agreement under seal, executed by the mortgagor and the mortgagees contemporaneously with the giving of the assignment, and forming part of the contract of transference and of the loan, that the mortgages were intended as collateral security for advancements required in the construction of the buildings to be erected on the lots.  The securities might have run directly to the bank which was to furnish the money, rather than by the circuitous route devised for the same end.  This, however, is immaterial.  The purpose undoubtedly was to procure a loan in some form, even if the amount to be obtained did not quite equal the face of the mortgages, and the money was to be furnished, not to the mortgagor, but to the mortgagees as the borrowers.

The bank, if it had bound itself absolutely to advance the stipu-

lated sum by instalments would have been secured to the amount fixed by the mortgages which would have outranked the liens, even if its officers knew at the time of making advancements that the buildings were in process of construction and that mechanics, among whom were the petitioners, were actually at work upon the premises. *Gerrity* v. *Wareham Savings Bank*, 202 Mass. 214. *W. A. Allen Co.* v. *Emerton*, 108 Maine, 221. *Kiene* v. *Hodge*, 90 Iowa, 212. *Brooks* v. *Lester*, 36 Md. 65. *Barnett* v. *Griffith*, 12 C. E. Green, 201. *Lipman* v. *Jackson Architectural Iron Works*, 128 N. Y. 58. *Moroney's appeal*, 24 Penn. St. 372.

It was, however, further provided in the agreement and the mortgagor and mortgagees covenanted, that they would not demand either the amount agreed to be loaned, or the amount represented by each mortgage note or any part thereof. The bank, furthermore, was expressly excepted from all obligation to advance any sums whatever by reason of the notes or the mortgages or the agreement, but at its sole option might supply such sums as from time to time its board of investment approved and directed. The result of what had been done placed the bank in the position of a mortgagee, who might voluntarily make advancements to the amount specified in the mortgage, but who was not bound to do so.

The legal estate as between the mortgagor and the mortgagees had passed to the bank at the inception of the petitioners' contracts. *Bailey* v. *Wood*, 211 Mass. 37, 44. And where land is subject to a recorded mortgage and a contract for labor is thereafter made, the lien attaches only to the equity of redemption. *Dunklee* v. *Crane*, 103 Mass. 470. *Carew* v. *Stubbs*, 155 Mass. 549. R. L. c. 197, § 32. Yet by the words "actually existing," something more than a title in mortgage, when taken in good faith and founded upon a valuable consideration, is meant. If liens subsequently accrue and it becomes necessary to marshal the property for the benefit of incumbrancers, the land is to be treated as security for all claimants who have the right of participation. *E. I. Dupont DeNemours Powder Co.* v. *Culgin-Pace Contracting Co.* 206 Mass. 585. R. L. c. 197, § 32. The mortgagee even may sue in equity in behalf of himself and all other secured creditors, notwithstanding he asserts a right to prior satisfaction out of the mortgaged property. Story Eq. Pl. (8th ed.) §§ 101, 158. The

record is not conclusive, if there is in fact no debt or obligation remaining to be secured and protected. The mortgage exists only as a technical incumbrance. A foreclosure would transfer the liens to the entire net proceeds in the hands of the mortgagee. *Knowles* v. *Sullivan*, 182 Mass. 318. *Hunneman* v. *Lowell Institution for Savings*, 205 Mass. 441.

It follows that if the amount for which the mortgage shall stand is wholly optional with the mortgagee, he cannot after notice that liens have attached, deplete the value of the equity to the disadvantage of the lienors, by payments which if refused could not have been enforced. The bank is bound by the knowledge of its officers that the work was being performed. *Beacon Trust Co.* v. *Souther*, 183 Mass. 413. *Allen* v. *Puritan Trust Co.* 211 Mass. 409. *Hardy* v. *Beverly Savings Bank*, 175 Mass. 112. And, having been clothed with full discretionary powers, it lawfully could have declined to make payments until the mortgagor and owner, or the mortgagees, or whoever may have been the real party in interest, had paid the petitioners, or until it had been satisfied, that no liens had attached. It did not choose to avail itself of this right, and the liens are superior to any sums disbursed after the petitioners began work. *Barnard* v. *Moore*, 8 Allen, 273. *Boswell* v. *Goodwin*, 31 Conn. 74. *W. A. Allen Co.* v. *Emerton*, 108 Maine, 221. *Ackerman* v. *Hunsicker*, 85 N. Y. 43. *Brinkmeyer* v. *Browneller*, 55 Ind. 487. *Frye* v. *Bank of Illinois*, 11 Ill. 367. *Heintze* v. *Bentley*, 7 Stew. 562. *Ladue* v. *Detroit & Milwaukee Railroad*, 13 Mich. 380. *Finlayson* v. *Crooks*, 47 Minn. 74. *Ter-Hoven* v. *Kerns*, 2 Penn. St. 96. *Tompkins* v. *Little Rock & Fort Smith Railway*, 15 Fed. Rep. 6. *Hopkinson* v. *Rolt*, 9 H. L. Cas. 514. *Deeley* v. *Lloyds Bank*, [1912] A. C. 756.

Inasmuch as the validity of the payments made before the statements of lien were filed in the registry of deeds is not questioned by the petitioners the mortgages to this extent are to be deemed as paramount, and the judge, before whom the case was tried without a jury, having ruled correctly that as to subsequent payments the liens were preferred, the decree of sale must be affirmed.

<div align="right">

*So ordered.*