Rockingham, ⎰
May 4, 1926 ⎱

### JOHN W. PEASLEE & a. v. JOSEPHINE M. EVANS & a.

The statute relating to mortgages to secure future advances (P. S., c. 139, s. 3) does not require that money promised to be paid shall be advanced when the mortgage is given. When the event upon which the money is to be paid at a later date is fully agreed upon, a present mortgage to secure a note for the agreed sum is not invalid under the statute if the event afterwards occurs and payment is made as agreed. The validity of such a mortgage is determined by the common law.

A mortgagee of real estate who has bound himself to make advances for a clearly defined object is at common law a *bona fide* purchaser to the full amount of his contractual liability, and the lien of his mortgage for advances made in compliance with his contractual obligation is good against the lien of mechanics engaged in the construction of buildings upon the premises, with his knowledge, at the time of making the advances.

BILL IN EQUITY, in aid of suits at law to establish builders' liens upon property of the Edwards Construction Company. Trial by the court with a decree in favor of the plaintiffs.

Josephine Evans held the title to one hundred lots of land in Plaistow. Her husband, the defendant Charles M. Evans, was the real owner, and sold the property to the company, taking back a purchase money mortgage for $15,000. In that mortgage was inserted an agreement that Evans would release any single lot designated by the company for a payment of $500.

The company designed to build houses upon the lots and entered into an agreement with Evans whereby he was to take mortgages for $3,600 each upon several of the lots; $500 of each mortgage debt was to be treated as payment of the sum promised to be paid for a release of the lot from the blanket mortgage, and the balance of $3,100 was agreed to be advanced in fixed amounts as the house arrived at certain stages of construction.

The work proceeded and payments were made as agreed. The

plaintiff's claims are for materials going into the construction of the houses. If Evans is entitled to a preference as to all the advances and the $500 allowances on account of the releases, his claim exceeds the value of the house in each instance.

A bill of exceptions was allowed by *Branch*, C. J. Other facts are stated in the opinion.

*Frank A. Batchelder* and *George R. Scammon* (*Mr. Scammon* orally), for the plaintiffs.

*William H. Sleeper* and *Chester T. Woodbury* (by brief and orally), for the defendants.

PEASLEE, C. J. The statute relating to mortgages to secure future advances (P. S., c. 139, s. 3) does not require that money promised to be paid shall be advanced when the mortgage is given. If the event upon which the money is to be paid at a later date is fully agreed upon, a present mortgage to secure a note for the agreed sum is valid if the event afterwards occurs and payment is made as agreed. The statute does not apply to such a mortgage. Future payments are not always future advances. No one would think that a mortgage to protect a surety was invalid under this statute because the payments by the surety were made after the mortgage was executed. *Belknap* v. *Wendell*, 31 N. H. 92. Payments made under other contracts are not in any worse plight.

This construction was put upon the statute in 1869: "The statute was 'intended to cut off all mortgages for the payment of security of any money or other things, which were not contracted for, or the liability for which did not attach at the time of the execution of the mortgage.' No mortgage 'can be valid for any future advances or accounts between the parties, which were not a matter of right and positive obligation between them at the time of the mortgage.' 'A mere provision for prospective advances or accounts, resting in the discretion of the parties or either of them' is within the mischief aimed at by the statute. See Story, J., in *Leeds* v. *Cameron*, 3 Sumner 488, *p.* 494.

"We do not think the statute should receive a construction which would invalidate any other class of mortgages than that just described, (see *Weed* v. *Barker*, 35 N. H. 386; *Richards* v. *Railroad*, 44 N. H. 127;) and it is apparent that the mortgage in the present case is not one of that class. The plaintiff's liability to make the

payments, and perform the labor, requisite to make up the sum of
$1500, attached to him at the time of the execution of the mortgage,
and was then a matter of positive obligation between the mortgagor
and mortgagee.  There was no provision for prospective advances
resting in the discretion of the parties or either of them.  The plain-
tiff's promise to make certain payments and perform certain labor
constituted a sufficient consideration for the mortgagor's absolute
note."  *Stearns* v. *Bennett*, 48 N. H. 400, 401, 402.

"The amount of the advance, eighteen hundred dollars, the con-
tingency upon which it was to be made, and the obligation of the
mortgagees to make it, were definitely agreed upon at the execution
and delivery of the note and mortgage, and the agreement was after-
wards performed, and the mortgage is not within the New Hampshire
statute prohibiting mortgages to secure future advances."  *Fessenden*
v. *Taft*, 65 N. H. 39, 40.  See also *Abbott* v. *Thompson*, 58 N. H. 255;
*Staniels* v. *Whitcher*, 72 N. H. 451.

The cases in this state treating mortgages to secure future ad-
vances as good only from the time the advances were made (*Richards*
v. *Railroad*, 44 N. H. 127; *International Trust Co.* v. *Company*,
70 N. H. 118; *Staniels* v. *Whitcher*, 72 N. H. 451) all involved
situations where there was no existing obligation to advance the
money.  In the first two cases mortgages were made to secure issues
of bonds, and the subsequent purchasers of those securities had no
relation whatever to the transactions of giving the mortgages.  In
*Staniels* v. *Whitcher*, *supra*, the mortgagor had the option to take
the advances or not, and this feature was deemed to be of importance.
The payments were future advances in the legal sense and all these
cases are within the statute.

The suggestion in the latter case that the holding in *International
Trust Co.* v. *Company*, *supra*, disregards the doctrine laid down
in *Stearns* v. *Bennett*, 48 N. H. 400, is based upon the assumption
that the earlier case is authority for the proposition that mortgages
to secure future advances are always invalid.  But that case, and
the argument in the opinion, are concerned with the question what
is or is not a mortgage which is within the meaning of the statute.
1 Jones Mtgs. (7th ed.), s. 366.  It being concluded that the instru-
ment then under consideration was not such a mortgage, because
a present obligation was created, there was no occasion to go further
and determine whether, if the mortgage had been within the pro-
visions of the statute, it could still have been upheld upon the
ground that the advances were made before the adverse claim at-

tached to the mortgaged property. The *Stearns* case does not hold that such a theory would be untenable, and there is nothing in the opinion to suggest that conclusion. This view is strengthened by the fact that *Richards* v. *Railroad, supra,* is there cited with approval.

The authorities here are decisive that the mortgages in question were not made to secure future advances, within the meaning of the statute. The unequivocal interpretation of the statute in 1869, and the subsequent reënactments without change (G. L., c. 136, s. 3;. P. S., c. 139, s. 3), establish the legislative intent. *Waterman* v. *Lebanon,* 78 N. H. 23, and cases cited. The question is, how far these mortgages are valid at common law. "No statute regulates the making of such mortgages [of real estate] except our statute which prohibits mortgages of real estate for the security of future advances or liabilities." *Belknap* v. *Wendell,* 31 N. H. 92, 99, 100; *Prescott* v. *Hayes,* 43 N. H. 593, 599.

While the rule is generally recognized that advancements made without contractual obligation to that end are not preferred over intervening liens of which the mortgagee had notice (*Hopkinson* v. *Rolt,* 9 H. L. C. 514), yet where there is such an obligation existing when the mortgage is given, a different rule has been adopted. " . . . it may be said with accuracy that when the senior mortgagee has bound himself to make advances for a clearly defined object, he immediately becomes a *bona fide* purchaser to the full amount of his contractual liability, exactly as if the entire consideration has passed on the execution and delivery of the mortgage. 1 Jones Mtgs. (7th ed.), *s.* 370." *Kuhn* v. *Company,* 101 O. St. 34.

"The bank, if it bound itself absolutely to advance the stipulated sum by installments would have been secured to the amount fixed by the mortgages which would have outranked the liens, even if its officers knew at the time of making advancements that the buildings were in process of construction and that the mechanics, among whom were the petitioners, were actually at work upon the premises. *Gerrity* v. *Wareham Savings Bank,* 202 Mass. 214." *Gray* v. *McClellan,* 214 Mass. 92.

"It having been absolutely obligated to pay the loan named in the mortgage, it is immaterial that only a very small portion had been thus transferred before the plaintiffs began work, or that before the entire amount had been disbursed the company received notice of the lien." *Whelan* v. *Company,* 214 Mass. 121.

The authorities in other states are in harmony with these views. *Blackmar* v. *Sharp*, 23 R. I. 412; *Hyman* v. *Hauff*, 138 N. Y. 48; *Moroney's Appeal*, 24 Pa. 372; *Ladue* v. *Railroad*, 13 Mich. 380; *Reed* v. *Rockford*, 62 N. J. Eq. 186.

Applying this rule, Evans is entitled to stand upon his mortgages, as of the date when they were recorded, to the extent of the payments made in accordance with the agreement entered into when the mortgages were given. The cash advances made by him did not exhaust the value of all the houses, and the question arises, what, if anything, he is entitled to claim under the promise of a payment of $500 for each lot released from the blanket mortgage.

No money was paid and no credit was given to the company upon the original mortgage debt for the so-called payment of $500 for a release of an individual lot from the original mortgage. Thereafter Evans held his original note for $15,000, secured by mortgage upon the remainder of the property, and a new note secured by mortgage upon the lot which had been released from the original mortgage. Of this new note, $500 was intended to take the place of the promised payment of that sum for the release.

This item, whatever its nature, was not a future advancement, in any sense of that term. The release of the blanket mortgage was made when the new mortgage was executed, and Evans took credit as of that date for $500 advanced upon the new contract. The transaction was then complete, and if a valid debt of $500 due from the company to Evans was thus created, the mortgage to secure it is valid and has precedence over subsequent liens.

The transaction appears to be in accordance with the prior agreement of the parties. It is found that there was no fraud. If the transaction is supported by a valid consideration it must be upheld.

The benefit contracted for by the company was the release of the individual lot. The value of the lots is found to be not exceeding $150 each. This would seem to be sufficiently favorable to Evans, since it is also found that the average value of the lots was $30. But whatever its value, Evans would have the right to hold any lot under the original mortgage and to refuse to release it until the whole $15,000 was paid. A surrender of this right would be a sufficient consideration for the payment of money. *Frye* v. *Hubbell*, 74 N. H. 358, 372, and cases cited.

While the arrangements made have peculiar features, not a little suggestive of fraud or unconscionable bargaining, yet as it is found

that there was no fraud and the bargain was carried out without complaint by the party who might suffer by it, it is not perceived how his creditors can impeach it.

It appears that before the new mortgages were given the original agreement had been so far modified that Evans was to include this promised payment of $500 cash in the debt to be secured by the mortgage of the individual lot. The mortgage given and taken in pursuance of that agreement was a valid security for the obligation arising in that way.

Including the $500 in the amount Evans can claim, the value of each house and lot was more than covered by the advances made by him. It follows that he is entitled to a decree.

*Bill dismissed.*

*Branch*, J., did not sit: the others concurred.