No. 22 Western Hampshire, ss.

THE ROGERS & HUBBARD CO. (William E. Parker)
v. BESZKO and

THE GENERAL CIGAR CO., INC., Trustee
 (Trustee, Pro Se; John H. Finn)

THE TRUSTEES OF THE SMITH CHARITIES, INC.,
 Adverse Claimant.

From the District Court of Hampshire—Mason, J.

Argued May 1, 1941—Opinion Filed June 16, 1941

ROBBINS, J. (Hibbard, P.J., & Riley, J.)—This is an action on a judgment. It is agreed that the amount now due from the principal defendant is $1,331.32 with interest thereon from February 1, 1935. It appeared, as set forth in the decision of the trial court, that on May 6, 1939, John Beszko and his wife, Emma Beszko, signed a promissory note payable to The Trustees of the Smith Charities for $1,500, payable on demand with interest at 5 per cent per annum payable semi-annually. This note was secured by a chattel mortgage duly recorded in the office of the Town Clerk of Hatfield. The property covered by this mortgage was therein described as follows:

"All our crops, whether already planted or to be planted during the 1939 crop season, including 5 acres of tobacco, 1½ acres of set onions, 4 acres of potatoes, ½ acre of carrots, and all other crops of every kind and description to be raised during the 1939 crop season.

"The foregoing crops will be raised on the premises known as the Beszko farm, of which one tract of ten acres more or less is situate in that part of said Hatfield known as Bradstreet, and of which one tract of seven acres is situate in that part of said Hatfield known as Three Mile Brook in North Hatfield."

The title to the land referred to in this mortgage was in Emma Beszko.

The Trustees of the Smith Charities had had prior dealings with Mr. and Mrs. Beszko and held a real estate mortgage on this property on which there were still taxes due to the Town

of Hatfield and certain insurance premiums chargeable to Mr. and Mrs. Beszko.

In consideration of the $1,500 note and mortgage it was agreed that the Trustees of the Smith Charities should pay these taxes and insurance premiums, and should advance money for raising the crops referred to.

In accordance with this agreement the Trustees of the Smith Charities paid to the Town of Hatfield taxes on the real estate for 1936, 1937, and 1938, and also paid insurance premiums.

The controversy in this action relates solely to the crop of tobacco, or its proceeds. This is the crop described in the mortgage. It was raised on land of Emma Beszko, wife of John Beszko, the principal defendant. It was raised by said John Beszko with his own labor and the labor of his wife and children, with the help of money advanced by the claimant for the raising of this tobacco and other crops as already stated. Said John Beszko raised this crop without interference or control by the claimant. After the tobacco had been harvested, and while it was in the shed on the property of Mrs. Beszko, the President of The Trustees of the Smith Charities visited the Beszko farm and the tobacco was shown to him. He did not take formal possession of it, and he gave no directions as to its care and management.

When the tobacco was ready for sale, Charles E. Morton, an agent of the General Cigar Co., Inc., the trustee in this action, conferred with the defendant John Beszko. After some negotiations, a written agreement for the purchase and sale of this tobacco was signed by the General Cigar Co. and by John Beszko. When the contract was executed the agent of the General Cigar Co. had actual knowledge of the mortgage to the claimant.

The President of the Trustees of the Smith Charities talked over the telephone with John Zagrodnik, an officer of the General Cigar Co., Inc. He told Zagrodnik that the mortgage was still in existence and that the check for the proceeds should be made payable to the Smith Charities.

On January 17, 1940, the General Cigar Co., Inc., took possession of the tobacco in question, and thereafter on the same day this writ was served on the said trustee.

The trial court found for the plaintiff against the defendant in the sum of $1,803.50, and for the claimant against the trustee in the sum of $1,394.92.

The grievances claimed in the report by the plaintiff are upon the court's denial of several requested rulings and the court's granting of certain of the claimant's requested rulings. The plaintiff also alleges the court's finding for the claimant was erroneous as a matter of law.

The claimant's request number 1 which was granted and the plaintiff's requests numbered 17, 18, 19, and 20, which

were denied, all dealt with the validity of the claimant's mortgage on the tobacco crop. The trial court ruled that the mortgage was valid. This ruling was correct. Even before the enactment of Chapter 86 of the Acts of 1935, now G. L. c. 255, s. 7A, such a mortgage was good. *Parsons* v. *American Agriculture Chemical Co.* 280 Mass. 424, and cases there cited. The Acts of 1935 confirmed this law.

It is important in this case to see just what the findings are as to the sale made by the defendant to the trustee. In his disposition of the claimant's request number 4, the trial court found that the claimant had waived the provision in the mortgage requiring its written consent to the sale; in dealing with the plaintiff's request number 6, he found that there was no agreement by the trustee to pay the claimant's mortgage; but in disposing of the plaintiff's request number 10, he found that the only ratification of the sale by the claimant was conditioned upon payment by the trustee to the claimant. The fact that the trustee had actual, as well as constructive, notice of the mortgage is clearly found.

There is no doubt that had the claimant's consent to the sale been unconditional, the trustee would have taken good title to the tobacco. *Shearer* v. *Babson,* 1 Allen, 486. *Pratt* v. *Maynard,* 116 Mass. 388. Where, however, the consent was conditional, as in the case at bar, the mortgage lien remained upon the tobacco. See *Arnold* v. *First National Bank of Cripple Creek* (*Colorado*), 97 A. L. R. 643, and the annotation thereafter, especially at page 656 *et seq.*

Whether it be based on the theory of undisclosed principal, the theory of equitable assignment, or some other equitable theory, we are of the opinion that in the case at bar the claimant as mortgagee had a claim against the trustee prior to that of the plaintiff for the price of the tobacco. "'Privity between the trustee and the claimant is not a necessary element in such proceedings. A claimant may assert either legal or equitable rights to goods, effects or credits in the hands or possession of a trustee." *Levin* v. *Lerner,* 290 Mass. 294, and cases there cited.

The trial court rightfully ruled plaintiff's request number 22 to be inapplicable to facts found. The request dealt with an excess of the amount of the claimant's charges over the amount of the claimant's mortgage. The statement of the charges and credits against the mortgage shows a balance of $1,437.52 due thereon, which is less than the amount for which it was written. From the statement it is impossible to tell when claimant paid the taxes to the Town of Hatfield or the insurance premiums, and it cannot be assumed in the face of the decision that these items were paid at a time when they brought the total charges to an amount which, less the credits then entered, was greater than the amount for which the mortgage was written. The mortgage secured a note for $1,500

but it was orally agreed by the parties to it that the claimant instead of paying over that sum to the Beszkos should pay off certain taxes and bills for insurance, and make advances for raising the crops covered by the mortgage. Such a mortgage was valid up to the amount for which it was written. *Hall v. Tay*, 131 Mass. 192, and gave to the claimant priority over later encumbrances. *Gray* v. *McLellan*, 214 Mass. 92; *Gerrity* v. *Wareham Savings Bank*, 202 Mass. 214.

The report is to be dismissed.