HORACE J. PERRIN v. LOYAL C. KELLOGG, WILLIAM WALLACE, DAVID CADY, HARLOW F. COY ET AL.

*Disposition of proceeds of mortgaged property—Assignment to mortgagee of outside claims against the mortgager.*

Where a mortgager and mortgagee agree that certain mortgaged property shall be sold and its proceeds applied on the general indebtedness after satisfying other claims, they still have power to make a different disposition of the proceeds and may be bound thereby, if third persons interested in the premises do not insist that the proceeds shall be applied in reduction of the debt.

A mortgagee cannot take claims held by third persons against his mortgager, and include them in his mortgage unless the mortgager consents and third parties are not prejudiced.

Appeal from Calhoun. Submitted April 16. Decided June 14.

FORECLOSURE. Defendants Kellogg, Stout, Mills and Temple appeal.

*Wm. D. Adams, John C. FitzGerald, D. Darwin Hughes, J. J. Speed, G. V. N. Lothrop* and *Ashley Pond* for complainant.

*W. H. Briggs, Arthur Brown* and *Breese & Stearns* for defendants.

MARSTON, J. Complainant filed his bill to foreclose several mortgages, and on the 10th day of March, 1877, a decree was rendered in his favor for the sum of $25,000, from which decree certain of the defendants appealed.

The appellants deny that any amount is due and owing upon these mortgages, while the complainant claims that the amount to which he is in fact entitled far exceeds the amount fixed by the decree, but because a greater sum could not be collected out of the property he was content with the decree as it stood.

The accounts between the principal parties interested have been running for a long series of years, and some, if not all, are quite complicated. In case we should find that certain settlements, as asserted by complainant, were in fact made, and that defendant Kellogg, at the time thereof, understood and was bound by them, the case will be very much simplified and the necessity will be avoided of entering into an extended examination of all the accounts and dealings between these parties.

One of the principal items of indebtedness is evidenced by a note dated April 4th, 1866, and which, it is claimed, was given upon a fair and full settlement of all existing accounts up to that date. The defendants do not deny the giving of this note, but claim that there was no settlement, or if there was, that it was made subject to a farther examination and correction; that certain errors were afterwards discovered; and that if corrected, but little if anything was in fact then owing to complainant.

We have no doubt but that a full and complete settlement, and one then fully understood by the parties,

was made, and that this note was given for the balance then found due. Upon this subject the evidence as to what took place at the time, the relations between the parties afterwards, the payment of interest thereon, and their subsequent dealings and transactions, all show beyond controversy that such a settlement actually was made.

If then we take this settlement as a basis, and add to the amount of the note then given and interest thereon, the amount of the Coy and Cady mortgages with interest thereon, which we understand are not disputed, the decree below would have to stand, as the amount of these securities combined would exceed the amount fixed by the decree.

There are however certain disputed items which would affect this conclusion if the appellant's view thereof shall be found correct.

*First*, as to the note of May 8th, 1868, given by Kellogg to Wallace. There is no doubt but that this note was discounted by the bank, and placed to the credit of Wallace on the 7th day of July, 1868. The oral evidence in the case, and the copy of Wallace's account, as taken from the books of the bank, show such to be the fact. It also appears that complainant was liable as an endorser upon this note, and as such afterwards paid to the bank the amount thereof.

*Second.* April 20th, 1867, William Wallace made his note, payable to the order of Kellogg, at the National Bank of Michigan. This note Kellogg endorsed payable to the order of complainant. The testimony of Perrin, of Wallace, of Kellogg, of Hughes, the stipulations in the case, all are to the same effect, and show that this note was recognized and treated as a valid claim and as secured to complainant by this mortgage.

*Third*, in reference to the orders given in favor of Wallace and Collier payable out of the proceeds of the Aldrich farm.

The facts in reference to this Aldrich farm, as testified

to by both Kellogg and Perrin, in substance were that Kellogg owned this farm, subject to two mortgages thereon, one to Vary and one to Perrin; that the farm was to be sold for not less than $15,500, and Perrin was to receive the proceeds thereof, and after paying the Vary mortgage credit Kellogg on his mortgage indebtedness with the balance. Perrin testifies that Kellogg was to have the privilege of drawing on the balance, after paying the Vary mortgage, "for a certain amount to apply upon some matters, which were against him, at least he said it would be necessary for him to use some for some other matters."

The order to Wallace was by its terms made payable out of the proceeds of this farm. It was given, Wallace testifies, upon a final settlement of account between Wallace and Kellogg. The Collier order, Perrin testifies, was also to be paid out of this farm, and such was Kellogg's understanding and intention. It was also treated by Perrin in his account with Kellogg. It appears from the testimony of Mr. Gill, that in October, 1869, he drew off and figured up the account between Perrin and Kellogg. In this account Kellogg was charged with the Vary mortgage, then owned by Perrin, and was credited with the full proceeds of the Aldrich farm, less the amount of the Wallace and Collier orders, and this settlement and manner of charging these orders and crediting the balance was consented to by both parties. In February, 1871, the parties and their solicitors met and examined a schedule of account in which the balance of the Aldrich farm proceeds were so credited, and it was agreed to by the parties and their solicitors as correct, and a stipulation entered into that a decree should be entered for the balance as shown by such schedule. Indeed unless we shut our eyes, and refuse to recognize as of any binding effect the letters and stipulations of Kellogg in this case, we can come to no conclusion other than that these orders should be included and that a balance for at least the sum of twenty-five thousand

dollars was due the complainant at the time the decree was granted.

It is said however that the proceeds of the Aldrich farm, less the amount of the Vary mortgage, should be applied in reduction of the general indebtedness, under the agreement made between Kellogg and Perrin as to the sale of the farm, and that the proceeds could not be otherwise disposed of.

This of course is upon the assumption that the parties did agree to apply the balance in reduction of the general indebtedness. Perrin however testifies that Kellogg at the time reserved the right to draw upon the proceeds for a certain amount, to apply upon some claims held against him, and it was in recognition of and pursuant to this right that these orders were drawn.

Even if such had not been the agreement previous to the sale of the Aldrich farm, or if it had been expressly agreed that the proceeds thereof should be applied in reduction of the general indebtedness, the parties might subsequently have otherwise disposed of the proceeds, and such a disposition would be binding upon them. Third parties interested in the premises might have a right to insist that the proceeds should be applied in reduction of the debt, and that such an agreement could not afterwards be changed without their consent to their prejudice, but I do not understand it to be claimed in this case, that the proofs show any third parties in a position at that time to interfere.

Another objection is made which perhaps it would be well to notice briefly, viz.: That the open mortgages in this case secure only the debts of Kellogg to Perrin or Perrin & Co., and were not intended to cover all debts of Kellogg, but only such as should be contracted by Kellogg with Perrin.

We are inclined to think that this view is correct, and that Perrin could not take claims against Kellogg, held by third parties, and as assignee or otherwise include them in this mortgage. We can however see no

good reason why, if Perrin held any such claims, Kellogg, so long as third parties would not be prejudiced thereby, could not consent to their being held by Perrin and that they should be secured by and included in the mortgage.

That Kellogg did so agree in this case there can be no question, and such agreement, we are of opinion, must be considered as binding.

Without further pursuing this investigation, I am of opinion that the decree rendered was sufficiently favorable to appellants and that it should be affirmed with costs.

CAMPBELL, C. J. and COOLEY, J. concurred. GRAVES, J. did not sit in this case.