WILLIAM J. BARRY & others, trustees, & others, *vs.* GENERAL MORTGAGE AND LOAN CORPORATION.

SAME *vs.* SAME.

Suffolk. November 9, 1925. — January 6, 1926.

Present: RUGG, C.J., CARROLL, WAIT, & SANDERSON, JJ.

*Mortgage,* Of real estate: redemption, construction mortgage. *Contract,* Validity, Construction loan agreement. *Equity Jurisdiction,* To redeem from mortgage.

A committee, acting for and in behalf of creditors who had furnished labor and material for building being done by a corporation which in the name of a nominee had purchased and had taken title to certain real estate for the purpose of development and had mortgaged it to secure

construction mortgage notes, procured from the corporation's nominee a deed under which they held the equity in the property for the benefit of the creditors, and then brought two suits in equity seeking in one suit an accounting, the disallowance as unconscionable of certain items charged by the defendant against the mortgagors under the terms of an unrecorded construction loan agreement, and a right to redeem, and in the other suit seeking rescission of the unrecorded construction loan agreement. *Held,* that

(1) The plaintiffs as successors in title of the mortgagor had the mortgagor's rights and no others;

(2) It was not essential to the validity of the construction loan agreement that it be recorded.

The owner of certain land upon which he wished to erect buildings in a transaction somewhat speculative, made contracts in writing to secure loans, first one of $180,000 and later one of $36,000, at rates of interest of one per cent and one and one third per cent per month, respectively, from the dates of notes immediately given and secured by mortgages upon the property. The money, however, was not to be advanced by the mortgagee except as needed and as the construction of the buildings proceeded. The agreements further provided that the mortgagee was immediately to be credited, as for money advanced, with $9,000 for services in securing the first loan and $6,000 for securing the second loan, and as to each loan with $1,200 for services as attorney and inspector upon the passing of papers. Afterwards, the owner coming into financial difficulties and the mortgagee threatening foreclosure, the owner conveyed his interest to a trustee for the benefit of his creditors, who, by one suit in equity sought an accounting and redemption and in the accounting a disallowance of interest computed before actual advance of money and also of the items of $9,000, $6,000 and $1,200, and in the second suit sought a rescission of the construction loan agreements. *Held,* that

(1) The terms of the agreements did not themselves import fraud;

(2) No fraud nor bad faith appearing, the agreements were enforceable in all their provisions.

TWO BILLS IN EQUITY in the Supreme Judicial Court for the county of Suffolk, the first filed on April 17, 1925, and the second on May 1, 1925, between William J. Barry, Harold L. Bond and Abraham Luff, "as they are trustees under a trust deed for the use and benefit of the labor and material men creditors of York Apartments, Inc., a Massachusetts corporation; and . . . as they are a committee acting for and in behalf of said creditors," as plaintiffs, and the General Mortgage and Loan Corporation, as defendant.

In the first bill, the plaintiffs alleged that in equity and good conscience there was nothing due on certain mortgage

notes secured by construction mortgages held by the defendant as mortgagee by reason of the fact that, purporting to act under construction loan agreements between the mortgagor, the plaintiffs' grantor, and the defendant, which were the basis of the loan, the defendant had made charges and deductions from the amounts to be loaned which were in "large part unfair, excessive, extortionate, unconscionable and grossly inequitable, and ought not to be allowed to the defendant;" and the plaintiffs sought an accounting with the defendant as mortgagee. In the second suit, the plaintiffs sought to have the construction agreements rescinded, to have proceedings in foreclosure enjoined, and to be given a right to redeem. The suits were referred to a master and were heard together by him. Material findings by the master are described in the opinion. There were no exceptions to his report.

By order of *Pierce*, J., who heard the suits upon the pleadings and the master's report, final decrees were entered granting the plaintiffs in the first suit leave to redeem from the mortgages on payment of $186,996.13, and dismissing the second suit. The plaintiffs appealed.

The cases were submitted on briefs.

*George L. Wilson & F. W. Thayer*, for the plaintiffs.

*H. W. Ogden & E. J. Owens*, for the defendant.

SANDERSON, J. The three plaintiffs bring these bills as trustees holding title to the equity of redemption of the mortgaged premises under a trust deed, and also as a committee acting for and in behalf of certain creditors of York Apartments, Inc. The first is for an accounting and the redemption of six mortgages held by the defendant; the second for the rescission and cancellation of six construction loan agreements which accompanied the mortgages. By order of court these cases were consolidated for trial.

The plaintiff Luff and two associates, on May 15, 1924, organized a corporation called York Apartments, Inc., for the purpose of acquiring three lots of land and erecting thereon three apartment houses without any substantial investment of their own money in the enterprise. The defendant, in response to an application by one of these

organizers for three construction loans to be secured by mortgages on the lots in question, agreed to loan $60,000 on each, subject to certain conditions, one of which was that the applicant and his associates purchase from the defendant certain real estate in Roxbury for $45,000. The conditions were accepted, and the papers necessary to carry out the transaction were executed and delivered on June 2, 1924. They included a deed of the three lots from the former owner to a representative of York Apartments, Inc., and a mortgage back, to which the mortgages to the defendant were subject. The notes secured by the defendant's mortgages were to run for one year with interest at the rate of one per cent per month. In November, 1924, York Apartments, Inc., arranged with the defendant for another construction loan of $12,000 on each lot, which was taken by a subsidiary and later assigned to the defendant. The notes secured by these mortgages were for three months, with interest payable monthly in advance after maturity at the rate of one and one-third per cent per month. Up to this point the organizers of York Apartments, Inc., had put no money into the enterprise. An unrecorded construction loan agreement accompanied each mortgage, fixing the time when payments to the full amount of the mortgage should be made, some of which were to go to the defendant for certain charges and expenses. After the last series of mortgages was placed, suspended building operations were resumed and continued until March 15, 1925.

Meanwhile, creditors who had furnished labor or materials for the buildings held meetings, and on January 2, 1925, appointed the plaintiffs a committee with power to proceed with their construction. Two members of this committee represented creditors; the third, Luff, was president of York Apartments, Inc. At a meeting, attended by more than one half the creditors, on April 2, 1925, a vote was taken appointing the plaintiffs a committee to represent them. Two of the plaintiffs first learned of the construction agreements at a meeting in December, 1924; the other knew of them from the first and guaranteed performance of the first series of these agreements. All creditors who attended the

meeting in December were aware of the existence of construction agreements.   Title to the three lots here in question was conveyed to the plaintiffs by a trust deed dated January 2, 1925, subject to all restrictions, mortgages, liens, taxes, and other existing encumbrances and charges against the property.   They were therein given broad discretionary powers to carry out such measures as, in their judgment, would be most beneficial to secure the completion of the buildings and payment to creditors furnishing labor or materials in their construction.   There was also provision for the manner in which payments should be made under the mortgages, and money expended by the plaintiffs' direction.   Thereafter such payments were requested by the plaintiffs and made from time to time by the defendant. The total amount of unpaid claims for labor and material is about $55,000, of which approximately $34,000 was unpaid when the creditors' committee was appointed.   The plaintiffs concede that the defendant is entitled, as of April 1, 1925, to $138,538.71.   The decree provided that the plaintiffs might redeem on or before August 6, 1925, by payment of $186,996.13.   The difference is made up chiefly of charges and payments authorized by and made in accordance with the terms of the unrecorded construction agreements.

The plaintiffs contend that the creditors, whom they represent, and who contributed to the value of the buildings without knowledge of the construction agreements, have rights in part at least superior to those of the defendant, and that some of the terms of those agreements are inequitable and as matter of law fraudulent.   The provisions upon which they base this contention are, (1) items requiring payment of interest from the date of the notes on the whole sum agreed to be advanced; (2) clauses which are the basis of the master's findings that the defendant charged and received as a consideration for making the first series of loans $9,000, and $6,000 by way of charge for making the three $12,000 loans with interest thereon for three months; and (3) the provision in each of the first series of agreements for payment of $1,200 upon passing the papers for services of attorney and inspector.

The parties who have a right to redeem are the mortgagor or persons claiming or holding under him.  G. L. c. 244, § 18.   By reason of the conveyance of legal title to the plaintiffs, they stand in the place of the mortgagor.   Such rights as the plaintiffs have to represent creditors in this proceeding they acquire by virtue of the trust deed, and those rights are not enlarged by vote of the creditors to which reference has been made.   None of the creditors has assigned his claim to the plaintiffs, or given notice of a claim of lien for labor or materials under the provisions of G. L. c. 254; and none of them is an attaching creditor.   A simple contract creditor cannot maintain a bill to redeem.   *Talbot* v. *Gingras*, 246 Mass. 356, 358.   The plaintiffs have all the rights of a mortgagor and no more.   *Mainland* v. *Upjohn*, 41 Ch. D. 126.  *Whelan* v. *Exchange Trust Co*. 214 Mass. 121.   *Kempton* v. *Boyle*, 233 Mass. 579.   *Upton* v. *National Bank of South Reading*, 120 Mass. 153, 156.

It is not essential to the validity of an agreement accompanying a mortgage to secure future advances that the agreement be recorded.   When such a mortgage is made in terms to secure a note for a round sum, the actual advances or liabilities or whatever indebtedness is in fact covered by the mortgage, may be shown by parol.   *Hills* v. *Farrington*, 6 Allen, 80.   *Hall* v. *Tay*, 131 Mass. 192, 194.   *Taft* v. *Stoddard*, 142 Mass. 545.   *McKinster* v. *Babcock*, 26 N. Y. 378.

In *Kempton* v. *Boyle*, *supra*, an oral agreement between mortgagor and mortgagee, before the mortgage and construction agreement were executed, for a bonus to be deducted from payments thereafter to be made in consideration of the mortgagee's promise to make the loans and perform services in connection with the undertaking, was held to be valid; and a junior mortgagee, taking title without knowledge of the agreement, in redeeming was required to pay the bonus in addition to the amount of money advanced on the first mortgage. · It was therein held that the bonuses were not mere gratuities but valid contracts.   An oral agreement to increase the amount of interest over that stated in the mortgage is valid, and the owner of the equity who was a

party to the agreement must pay interest at the increased rate in redeeming.  *Ellis* v. *Sullivan*, 241 Mass. 60.

In *Mainland* v. *Upjohn*, *supra*, upon a bill to redeem by a second mortgagee, it was decided that, the advances having been made upon a security of a speculative character, the court in taking the account would allow the mortgagee the sums actually deducted by him for commissions or bonuses, at the times of making the advances, provided the deductions were made as part of the mortgage contract, under a bargain deliberately entered into by the parties while on equal terms and knowing perfectly well what they were doing, and without any improper pressure, unfair dealing, or undue influence on the part of the mortgagee: the court treating the transaction in each case as amounting in fact to the payment of the whole amount of the advance to the mortgagor and the return of a certain part in consideration for the accommodation.   The holder of a mortgage given to secure a construction loan owes no duty to a second mortgagee to see that the money advanced by him is expended on the property.   The mortgagor receiving the money may apply it to the payment of other obligations.  *Tripp* v. *Babcock*, 195 Mass. 1, 7. In the case last cited, no money was advanced at the time the mortgage was given, but the contemporaneous agreement required it to be paid in six instalments as the building progressed, with interest on the face of the note from its date. The court held that this agreement to pay interest was valid until the time the mortgagee was no longer obliged to hold the money for future advances, and thereafter interest was to be charged on the amount advanced; and that interest as thus computed must be paid to redeem.  *Kempton* v. *Boyle*, *supra*.

In a case where petitioners had a mechanics' lien and the advances, to be made by a bank under a construction loan mortgage, were optional with it, the court said: "The mortgages having been recorded previously to the date of the petitioners' contract, it would be of no consequence, if the actual transaction corresponded with the face of the papers, that the value of the property must have been enhanced by the petitioners' labor.   They had constructive notice of the

mortgages, to which under the statute their liens would be subordinate . . . . The bank, if it had bound itself absolutely to advance the stipulated sum by instalments, would have been secured to the amount fixed by the mortgages which would have outranked the liens, even if its officers knew at the time of making advancements that the buildings were in process of construction and that mechanics, among whom were the petitioners, were actually at work upon the premises." *Gray* v. *McClellan*, 214 Mass. 92, 95. G. L. c. 254, § 7.

The rights of creditors whose liens have been established as of a date subsequent to the recording of the mortgage, are subject to those of the mortgagee both as to advances made previously to the attachment and as to those thereafter made up to the amount for which the mortgage was written, provided the payments thereafter made were required by a binding obligation on the part of the mortgagee. *Whelan* v. *Exchange Trust Co., supra.* In *Gerrity* v. *Wareham Savings Bank,* 202 Mass. 214, a mortgage to secure future advances was held to be valid against an attaching creditor for the amount advanced after the attachment as well as for that paid before. " . . . the full amount of the ultimate indebtedness was definitely fixed by the mortgage deed, which had been recorded, and, if only a part had been advanced at the time of the attachment, the plaintiff had constructive notice of the contract, the performance of which had not been interrupted." In that case the obligation to advance the amount paid after the attachment depended in part upon an oral agreement between the mortgagor and mortgagee before the date of the attachment.

In the case at bar the provisions of the construction loan agreements were understood by both parties and there was no evidence of fraud or bad faith. The terms of the agreements do not in and of themselves import fraud. The loans were somewhat speculative in their nature and the defendant was taking unusual risks in making them. It is not now seeking to attach to the mortgages any indebtedness other than that for which they were given. *Upton* v. *National Bank of South Reading, supra.* The defendant has at all

times complied with the terms of its obligations and when foreclosure proceedings were begun the mortgagors were in default on account of interest and taxes.

All questions argued have been considered. In the suit for cancellation of the construction loan agreements, no sufficient ground is presented for granting relief, and the decree is affirmed with costs. In the suit to redeem, the rights of the parties must be determined upon the assumption that the construction loan agreements are valid, the payments made in accordance therewith justified, and the findings of fact by the master final. The amount required by the decree to be paid for redemption was computed on that basis; but the decree must now be modified by fixing a date after rescript for redemption, and stating the amount which will then be due the defendant, details of which are to be fixed by a single justice, and when so modified it is affirmed with costs of this appeal.

*Ordered accordingly.*