397 Mass. 479 (1986)
492 N.E.2d 92
RICHARD SHANE, trustee,[1] & another[2]
vs.
WINTER HILL FEDERAL SAVINGS AND LOAN ASSOCIATION.
Supreme Judicial Court of Massachusetts, Middlesex.
February 5, 1986.
May 7, 1986.
Present: LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.
Floyd H. Anderson for the plaintiffs.
Eugene F. Grant for the defendant.
*480 LYNCH, J.
The novel question presented by this case is whether an agreement between the mortgagor of a parcel of land and the first mortgagee to increase the rate of interest on the mortgage is binding on the second mortgagee and consequently on the plaintiffs, as nominees of the second mortgagee and assignees of its rights and interests concerning this matter. The agreement to raise the interest rate was made without notice to the second mortgagee and was subsequent to both the giving of the second mortgage, and the execution of a written agreement between the first and second mortgagees assuring the junior lienor certain rights to notice and certain opportunities to cure defaults.
On April 27, 1983, the plaintiffs filed a complaint in the Superior Court seeking a declaration, pursuant to G.L.c. 231A (1984 ed.), that the rate of interest on the mortgage held by the defendant first mortgagee is 9.75%, the original interest rate of the first mortgage, rather than 11%, the interest rate later agreed to by the mortgagor and the defendant. The plaintiffs also sought money damages in an amount representing a refund of all interest payments made to the defendant above the original rate of 9.75%. After the judge denied the plaintiffs' motion for summary judgment, the parties jointly submitted a statement of agreed facts and a schedule of "agreed to exhibits." No testimony was given at trial and no evidence was submitted beyond the documentary exhibits stipulated to by the parties.[3] The judge found for the defendant and entered an order declaring that the interest rate on the mortgage held by the defendant remained at 11%. He ruled that the plaintiffs were not entitled to a rebate of moneys paid. The plaintiffs appealed, and we transferred the case from the Appeals Court on our own motion. We reverse.
The relevant facts are as follows. In April, 1977, Richard E. Ross, as trustee of Turnpike Realty Trust (mortgagor), executed a $450,000 mortgage note and deed to the defendant, *481 Winter Hill Federal Savings and Loan Association. The mortgage covered property on Turnpike Street in Canton. In January, 1979, the mortgagor granted a second mortgage note and deed on the same Canton property to Debral Realty, Inc. (Debral), for $100,000. Debral then entered into a letter of agreement with the defendant, whereby the defendant agreed to give Debral certain rights concerning notice and opportunity to cure defaults of the mortgagor. In June, 1981, without any notice to Debral, the mortgagor and the defendant entered into an agreement raising the interest rate on the first mortgage note held by the defendant from 9.75% to 11%. The mortgagor had agreed to the defendant's suggestion of raising the interest rate in order to cure a default and thus avoid foreclosure.[4] The monthly payments under the note were thereby increased $657, from $4,768 to $5,425. The defendant gave the mortgagor no additional funds. In October, 1981, when the mortgagor's monthly payments again became delinquent, the defendant sent Debral a notice of this delinquency and advised Debral of the defendant's intention to foreclose. For the first time the defendant also informed Debral of the increase in the interest rate. Debral paid the arrearages on the first mortgage at a monthly rate which included the increased interest.[5]
In April, 1982, the plaintiffs, as Debral's nominees, purchased the Canton property subject to the first mortgage of the defendant. Shortly thereafter, Debral assigned to the plaintiffs all claims against the defendant regarding the increase in the interest rate. As of June 11, 1984, the account was fully up to date.
The plaintiffs proceed on two theories to support their contention that the increase in the monthly interest rate did not bind Debral, and thus does not bind them as nominees and assignees of Debral's rights. First, they argue that the agreement *482 between the mortgagor and the defendant increasing the interest rate was contrary to the terms of the letter of agreement between the defendant and Debral. Second, they assert that, as a matter of common law, the defendant, as a first mortgagee with notice of Debral's junior lien, could not modify the terms of the first mortgage note without Debral's consent, where such modification would adversely affect the rights of Debral as second mortgagee. They argue that the increased interest rate was prejudicial and significantly impaired the security of Debral's second mortgage.
1. Contract claim. The relevant portions of the agreement between the defendant and Debral provide:
"[The defendant] does hereby agree that prior to taking any action to accelerate the maturity of the indebtedness evidenced by the above described note or to enforce collection thereof by foreclosure of the lien of the mortgage securing the same, [the defendant] will give [Debral] written notice ... of any default with respect to said note and mortgage and will allow [Debral] the right ... to cure such default.
"[The defendant] does further agree that it will make no future advances under the aforesaid note and mortgage, to the mortgagee [sic] or his successors in title other than those permitted pursuant to the provisions of [G.L.c. 183, § 28A], which advances are made for the purposes of protecting the [defendant's] rights under said mortgage, without first obtaining the consent of Debral Realty, Inc."
The judge ruled that, as no action was taken to accelerate the maturity of the indebtedness or to foreclose the lien, notice to Debral was not mandated by the first clause quoted. Similarly, he ruled that the notice of and consent to future advances required by the second clause quoted was inapplicable, as the defendant at no time paid any additional money to the mortgagor. We agree.
The plaintiffs' primary contention is that the phrase "prior to taking any action to accelerate ... or to enforce collection *483 ... by foreclosure" encompasses the defendant's offer to the mortgagor to refrain from accelerating the maturity or foreclosing in exchange for an agreement to raise the monthly rate of interest (emphasis added). They maintain that the intent of the parties to the agreement was to permit Debral to protect its security against a default by the mortgagor. It is suggested that this intent is evidenced by the language in the first clause quoted above, which supposedly reveals that "the primary obligation undertaken" by the defendant thereunder was to give Debral "notice of `any default' and the right to cure such default" (emphasis added). The plaintiffs therefore argue that, if "taking any action to accelerate" is interpreted as not having imposed a duty on the defendant to have notified Debral of the mortgagor's first default, the alleged intent of the parties to permit Debral to protect its security will be defeated.
It is, of course, true that the intent of the parties is a significant factor in the interpretation of a contract. We have said that a contract should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties. McMahon v. Monarch Life Ins. Co., 345 Mass. 261, 264 (1962). "Justice, common sense and the probable intention of the parties are guides to construction of a written instrument." Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 701 (1964), and cases cited. New England Found. Co. v. Commonwealth, 327 Mass. 587, 596 (1951). The plaintiffs' version of the parties' intent is, however, not suggested by the agreement. The agreement does not, as it might, provide simply that the defendant must give Debral written notice of any default and allow Debral the right to cure. Instead, the defendant's obligation to give notice of "any default" is carefully modified by the phrase "prior to taking any action to accelerate the maturity ... or to enforce collection ... by foreclosure." Thus, an affirmative decision by the defendant actually to take action to accelerate or to foreclose is necessary in order to trigger the defendant's obligation to give notice and opportunity to cure. The defendant, however, decided to forgo any such action in exchange for raising the interest rate. The defendant, then, was not "taking ... action" in the sense intended by the *484 letter of agreement. Compare Wilshire Enterprises, Inc. v. Taunton Pearl Works, Inc., 356 Mass. 675, 676, 678 (1970) (mortgage note entitled holder, at holder's election, to accelerate maturity following default. Such language was held to require "a positive act, a decision to accelerate by the creditor" and the fact that the creditor sent the debtor notice of his default and of the creditor's right to accelerate did not constitute a decision to accelerate).
The language of the letter of agreement is specific and well defined. While it plainly does operate to give Debral substantial opportunities to protect its security, such opportunities are limited, since the right to notice and cure is circumscribed, being triggered by specified events. The agreement suggests that the parties intended that Debral's right to protect its security should obtain only under certain conditions. "[T]he words themselves remain the most important evidence of intention." Robert Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973), quoting National City Bank v. Goess, 130 F.2d 376, 380 (2d Cir.1942). By reading "any action to accelerate" as broadly as the plaintiffs urge, we would convert the agreement from one granting a limited right to notice into one which would have obligated the defendant to give Debral notice whenever the defendant notified the mortgagor of a default. As this would vitiate the language of the first clause quoted, we decline to adopt the plaintiffs' interpretation. See McMahon v. Monarch Life Ins. Co., supra (a contract is to be construed to give reasonable effect to each of its provisions, if possible).
Finally, the plaintiffs contend that the agreement to increase the interest rate constituted a future advance. They argue that such an advance would violate the second quoted clause of the letter of agreement because Debral's prior consent was not obtained. If the words of a contract are unambiguous they must be construed in their usual and ordinary sense. Save-Mor Supermarkets, Inc. v. Skelly Detective Serv., Inc., 359 Mass. 221, 225-226 (1971), and cases cited. The words "future advances" and "advances"[6] are free from ambiguity. "Future advances" *485 are defined as "[m]oney lent after a security interest has attached and secured by the original security agreement." Black's Law Dictionary 609 (5th ed. 1979). The term "future advances" as employed by the defendant and Debral in the letter of agreement therefore meant payment by the defendant of money in excess of the loan already secured. The "future advances" clause precluded the defendant from extending to the mortgagor additional sums secured by the same property without first notifying Debral and obtaining its consent. This construction of the term's use is supported by the fact that the prohibition against future advances without Debral's consent is coupled with an exception permitting the defendant to make advances pursuant to G.L.c. 183, § 28A (as appearing in St. 1956, c. 92). That section extends the security of the mortgage to the repayment of "[a]ny sum or sums" loaned by the mortgagee to the mortgagor beyond the original indebtedness, in order to protect the mortgagee's rights, where sums lent are expended for certain specified uses (emphasis added). See Bennett v. Worcester County Nat'l Bank, 350 Mass. 64, 67-68 (1966) (statute concerns loans to mortgagor which might otherwise not be secured by terms of the mortgage). The defendant extended to the mortgagor no additional money by virtue of their agreement and consequently there was no violation of the "future advances" clause.
2. Common law claim. There is no doubt that by agreement the mortgagor and the defendant could bind themselves to an increased monthly interest rate. See Barry v. General Mortgage & Loan Corp., 254 Mass. 282, 287 (1926); Ellis v. Sullivan, 241 Mass. 60, 63-64 (1922), and cases cited; Strong v. Stoneham Co-op. Bank, 2 Mass. App. Ct. 828 (1974). Here, however, the question is whether such an interest rate agreement may bind Debral, as second mortgagee, where the defendant was aware of this junior interest, and where the agreement was subsequent to Debral's mortgage. Compare Strong v. Stoneham Co-op. Bank, supra at 829. The rule in this circumstance, as correctly recognized by the judge, is that such a later modification of the mortgage by a senior mortgagee *486 may not prejudice the rights or impair the security of a junior mortgagee, without the latter's consent. See Remodeling & Constr. Corp. v. Melker, 65 N.Y.S.2d 738, 740, aff'd, 270 A.D. 1053 (N.Y. 1946); Empire Trust Co. v. Park-Lexington Corp., 243 A.D. 315, 321 (N.Y. 1934); Diamond v. Tau Holding Corp., 131 Misc. 446, 448 (N.Y. Sup. Ct. 1927). See also Barbano v. Central-Hudson Steamboat Co., 47 F.2d 160, 162 (2d Cir.1931). Cf. Perrin v. Kellogg, 38 Mich. 720, 725 (1878); Exchange Place Corp. v. Tarvan Realty, Inc., 44 Misc.6d 980, 984 (N.Y. Sup. Ct. 1964); 100 Eighth Ave. Corp. v. Morgenstern, 3 Misc. 2d 410, 414-416 (Sup. Ct. 1956), modified on other grounds, 4 A.D.2d 754 (N.Y. 1957); Citizens & S. Nat'l Bank v. Smith, 277 S.C. 162, 165 (1981); 3 D. Harvey, Real Property and Title Closing § 838 (E. Biskind ed. 1984); 8 G. Thompson, Real Property § 4319, at 404-405 (Grimes ed. 1963).
The judge ruled that there was "no sound basis for any contention that the greater rate prejudiced Debral's rights or diminished its security interest as it existed at the time the second mortgage was executed." We hold that the better reasoned view is to the contrary. The agreement between the mortgagor and the defendant operated to obligate Debral to pay a greater sum per month in order to cure the mortgagor's default. Although this fact alone may not suffice to demonstrate an impairment of Debral's security,[7] it is clear that this increased cost constitutes prejudice to Debral. See 1 L. Jones, Real Property §§ 440, 444, 653, 654 (8th ed. 1928). See also Lomas & Nettleton Co. v. Isacs, 101 Conn. 614, 623 (1924); Bunker v. Barron, 93 Me. 87, 93 (1899); Brown v. Hardcastle, *487 63 Md. 484, 493 (1885); Heller v. Gate City Bldg. & Loan Ass'n., 75 N.M. 596, 599 (1965). Cf. Guleserian v. Fields, 351 Mass. 238, 242 (1966). Such prejudice is compounded to the extent that the agreement increased the likelihood of a second default by the mortgagor and thus increased the possibility that Debral would indeed have to cure at the higher rate of interest. We think it a fair inference from the record that the agreement placed a greater burden on the mortgagor who, having already suffered default due to delinquency, was now forced to meet a significantly larger monthly payment, and that this strain on the mortgagor's financial capacity contributed at least in part to the second default. We are not persuaded by the defendant's contention that a clause in the first mortgage giving the defendant the option of levying an additional charge that "shall not exceed a per annum rate of one per cent of the unpaid balance of the loan for the period of delinquency,"[8] served to give Debral notice of an across the board 1.25% interest rate increase (emphasis added). Although the plaintiffs have no ground to contest an additional charge in compliance with the terms of this clause in the first mortgage, see Barry v. General Mortgage & Loan Corp., supra at 288-289, the subsequent increase in the interest rate sought to be applied against Debral plainly exceeds the increase permitted under this clause. Debral thus took its lien without notice of such a prospective increase in the interest rate of the first mortgage. See Pettis v. Darling, 57 Vt. 647, 650-651 (1885) (mortgage permitted the mortgagor and senior lienholder to raise interest rate as long as modification agreement was executed within one year. Where agreement was executed after that period, the junior lienholder had "as good a right to rely upon the rate of interest of the prior mortgage debts as being fixed and certain as upon the amount of the principal"). Cf. Kratovil & Werner, Mortgage Extensions and Modifications, 8 Creighton L. Rev. 595, 610 (1974-1975).
*488 As we hold that the agreement between the mortgagor and the defendant did result in prejudice to Debral as second mortgagee, Debral, and consequently the plaintiffs, are not bound by that agreement in so far as it exceeds the additional charge contemplated by the first mortgage. Since the first mortgage permitted an increased rate of interest under certain conditions, see note 8, supra, that provision may be enforced against Debral and the plaintiffs. The judgment of the Superior Court is reversed, and this case is remanded to the Superior Court for entry of a declaration of an interest rate commensurate with the maximum allowed under the first mortgage and an award to the plaintiffs refunding all payments by Debral or the plaintiffs above that interest rate.
So ordered.
NOTES
[1] Trustee of Shane Realty Trust.
[2] James L. Shane, trustee of Shane Realty Trust.
[3] This fact does not appear in the record or in the judge's rulings and order. Rather, the plaintiffs' attorney offered this information without opposition at oral argument before this court.
[4] The agreement itself provides, in part: "In consideration of [the defendant's] not making demand for the entire balance due on our loan ..., we agree to an increase in the interest rate from 9.75% to 11.00%. No other terms or conditions of the existing note or mortgage are [affected] by this extension agreement."
[5] Debral's payments were made under protest and without prejudice to its right to challenge the increased interest rate.
[6] The term "advances" is defined as "[m]oneys paid before or in advance of the proper time of payment; money or commodities furnished on credit; a loan or gift, or money advanced to be repaid conditionally." Black's Law Dictionary 48 (5th ed. 1979).
[7] The record is bare of any evidence regarding the value of the Canton property during the time the mortgagor, and later Debral or the plaintiffs, paid the $657 a month increase as a result of the raised interest rate. It is mere speculation that this increase impaired Debral's security, without some indication that the property's value has remained constant or has been reduced. If in fact the property's value has risen, the value of Debral's equity may have actually increased due to the increased value of the real estate. See Schwartz, 13 Ann. Survey Mass. Law 2, 6 (1966).
[8] The clause provides in full: "At the option of the Association, on a loan which is delinquent by reason of the non-payment of any sum due the Association there may be charged an additional rate of interest, but such additional charge shall not exceed a per annum rate of one per cent of the unpaid balance of the loan for the period of delinquency."