[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this mortgage foreclosure action seeks foreclosure of its first mortgage on premises at 313-315 Grand Avenue, New Haven, which are owned by the defendants Luis and Olga Rivera (the "Property.") The defendants Mario Proiette, Jr. and Greer P. Gavin (the "defendants") hold a second mortgage on the Property. They contend that the plaintiff's mortgage lacks priority over the defendants' mortgage and that in the event the plaintiff's mortgage is found prior in right, the plaintiff should be required to marshal its assets because its mortgage is secured by three properties whereas the defendant's mortgage is secured only by the Property. The trial was limited to the issues of the priority of plaintiff's mortgage and the defendants' claim for marshalling. Only the plaintiff and the defendants Mario Proiette, Jr. and Greer P. Gavin were heard at trial.
The court finds that on December 15, 1988, the defendant Luis and Olga Rivera purchased the Property from the defendant Mario Proiette, Jr. and Greer P. Gavin for a purchase price of $190,000.00. The purchase contract as written provided that the Riveras would obtain a bank or institutional mortgage for $140,000.00 and pay the balance of the sales price in cash. The contract did not fully reflect the agreement of the parties however, because the defendants agreed to take a $50,000.00 purchase money mortgage.
On the date of closing the Riveras borrowed $365,000.00 from the plaintiff and secured the loan with a first mortgage on the Property and a mortgage lien on two other properties, one at 21 Peck Street, and the second at 139 Frank Street, both in New Haven. This mortgage (the "First Mortgage") was recorded in the New Haven Land Records with a first priority against the Property. The defendants' mortgage (the "P and G Mortgage") was CT Page 11391 recorded with a second priority on the Property.
Several months after the closing, an error was discovered in the provisions of the $365,000.00 promissory note payable to the plaintiff. The note as executed and recorded provided for sixth equal monthly payments of principal and interest of $4,806.20 each beginning on January 1, 1989 and a final payment of $343,407.30 on December 1, 2009. As written, the note provided for an approximate fifteen-year interval between the due date of the last monthly installment and the due date for the final of "balloon" payment. Counsel for the plaintiff drafted a new not and mortgage (the "Correcting Mortgage") to correct this error by changing the due date of the final balloon payment to December 1 1994, at the immediate end of the five-year installment payments The correcting mortgage and note are identical to the original mortgage and note in all respects except two. (They are even dated December 15, 1988, as the originals were.) The two change were the change in the maturity date and the inclusion of the following statement, which was added at the bottom of the first page of the correcting mortgage:
 THIS RECORDING IS TO CORRECT THE TERMS AND CONDITIONS OF THE DEBT WHICH ARE OUTLINED AND CONTAINED IN THE NOTE HEREIN WHICH SUPERCEDES THE PREVIOUS RECORDATION.
No additional funds were advanced by the plaintiff in connection with the Correcting Mortgage and the plaintiff did not obtain the defendants' consent or subordination to the Correcting Mortgage.
These facts provide the basis for the defendants' claim that the plaintiff's mortgage is subordinate to the defendants mortgage and that marshalling of assets must be required. Before analyzing the defendants' claims, it must be noted first that the plaintiff is claiming priority for the First Mortgage only to the extent of $140,000.00 in principal, plus interest on that sum and costs and attorneys' fees. This is consistent with the purchase contract, which provided that the Riveras would arrange first mortgage financing of $140,000.00. Secondly, the court, at the request of the parties, has taken judicial notice of two other foreclosure files in which the plaintiff foreclosed the First Mortgage against the other two properties encumbered by that mortgage. The plaintiff therefore has satisfied its mortgage against all of the encumbered properties except the Grand Avenue CT Page 11392 property which is the subject of this action.
In their first special defense, the defendants allege that the Correcting Mortgage, recorded without their consent a subordinate mortgagees, caused the First Mortgage to lose priority and became subordinate to the P and G Mortgage. The defendants cite no authority directly on point with the facts of this case. Instead, the defendants cite treatises and cases for the general principle of law that a subsequent, non-consenting mortgagee is not bound by a material change in the first mortgage which is prejudicial to the second mortgagee. The defendant cite cases where the interest rate on the first mortgage was increased and the amount of monthly payments was altered. Gluskin v. Atlantic Savings and Loan Association, 108 Cal.Rptr. 318
(1973); Shane v. Winter Hill Federal Savings and Loan Association, 492 N.E.2d 92 (1986). These cases accurately describe and apply the general principle that a non-consenting second mortgagee will not be bound by material and prejudicial changes in the first mortgage. However, the facts of the current situation do not call for the application of the same principle.
The purpose of the Correcting Mortgage was to correct an obvious error in the maturity date of the First Mortgage. The change did not prejudice the defendants in any way. The maturity date as corrected was December 1, 1994. The First Mortgage as corrected was still to mature after the maturity of the P and G Mortgage, which was to mature on December 15, 1993. The change made as a result of the Correcting Mortgage was not a change which impaired the defendants' position on the property. The current case is therefore readily distinguishable from the case cited by the defendants, where in each case the subsequent mortgagee was prejudiced by the attempted modification of the prior mortgage.
The defendants also argue that the plaintiff's use of the word "supersede" in the Correcting Mortgage indicates plaintiff's intention to relinquish the lien of the First Mortgage. This claim is clearly without merit. The plaintiff very carefully backdated the Correcting Mortgage so it bore the same date of execution as the First Mortgage, clear evidence that the plaintiff wanted to retain the same priority that it held.
In their second special defense the defendants claim that the P and G Mortgage is prior in right to the First Mortgage because it is a purchase money mortgage in favor of the seller CT Page 11393 which was not subordinated by a subordination agreement. The defendants again cite treatises and cases for the general principle that there is a presumption that a purchase money mortgage to the seller of the property takes priority over third party lender's mortgage unless there is a subordination agreement. Although once again the defendants may correctly state an isolated principle of law, the facts here clearly show that the P and G Mortgage was subordinate to the First Mortgage One of the treatises cited by the defendants states that subordination can be accomplished "by including language in the vendor's mortgage specifically referring to the third party lender's mortgage and declaring its subordination to it." Nelson and Whitman, Real Estate Finance Law, 9.2 p. 682 (2d Ed. 1985).
Similar language was in fact included in the P and G Mortgage. In describing the possible events of default under the P and G Mortgage, the mortgage states that a default in the "first mortgage" on the Property would constitute a default also under the P and G Mortgage. A default under the P and G Mortgage is defined to include:
 Default by the Grantors of any obligations of the Grantors in connection with the payment of the first mortgage on the property located at 313-315 Grand Avenue, New Haven, Connecticut, or if such indebtedness or obligation shall be accelerated, or if there exists any event of default under any instrument, document or agreement evidencing or security [sic] such first mortgage.
(Emphasis added.) Quite clearly the defendants understood agreed and intended that their mortgage was second in priority to the plaintiff's First Mortgage.
This intent is clearly shown in other ways also. The defendant Proiette testified repeatedly at trial that he and his partner were "taking back a second mortgage." The defendant answered interrogatories under oath in which they admitted that they knew their mortgage would be a second mortgage. The evidence supports only one conclusion: that the defendants knew and accepted that their mortgage held a second priority on the Property. The evidence clearly rebuts any presumption that the CT Page 11394 vendor purchase money mortgage would be first in priority.
The defendants also argue that even if they did agree to a subordinated mortgage on the property, they agreed to be subordinate only to a first mortgage for $140,000.00 whereas the First Mortgage was a blanket mortgage on three properties to secure $365,000.00. This claim is easily resolved. The plaintiff has stipulated in this action it is claiming a priority over the P and G Mortgage only for $140,000.00 in principal together with interest, attorneys' fees and costs of collection This stipulation places the defendants in the same position as they had previously agreed to: holding a $50,000.00 second mortgage subject only to a $140,000.00 first mortgage. The defendants' claim is unavailing.
The defendants also filed a counterclaim seeking an order from the court that the plaintiff marshal its assets because the First Mortgage was secured by several properties whereas the P and G Mortgage encumbers only the Property. The defendants counsel indicated during the trial that they were still asserting the marshalling claim despite the fact that the plaintiff had already foreclosed the First Mortgage against the other two properties it encumbered. The court asked counsel to address in the defendants' post-trial brief the applicability of marshalling in light of these facts. However, neither of the defendants post-trial briefs addresses marshalling. The court finds that the defendants have abandoned their marshalling claim. Even in the absence of abandonment, it is difficult to see how marshalling would apply where the First Mortgage has already been foreclosed against all encumbered properties except the Property.
Judgment is entered on the complaint that the First Mortgage has priority over the P and G Mortgage to the extent of $140,000.00 in principal, together with interest, costs of collection and attorneys' fees. Judgment is entered for the plaintiff on the counterclaim.
Christine S. Vertefeuille, Judge CT Page 11395